**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                                                      :       PENNSYLVANIA

           v. :

RICKY DEON BOYER :

        Appellant : No. 508 WDA 2023

Appeal from the PCRA Order Entered April 3, 2023
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0014156-1999

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                                                      :       PENNSYLVANIA

           v. :

RICKY DEON BOYER :

        Appellant : No. 509 WDA 2023

Appeal from the PCRA Order Entered April 3, 2023
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0013942-1999

BEFORE: KUNSELMAN, J., BECK, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.: **FILED: JUNE 3, 2024**

Appellant, Ricky Devon Boyer, appeals from the orders entered in the Allegheny County Court of Common Pleas on April 3, 2023. We affirm.

The relevant facts and procedural history are as follows: The instant appeal arises from the denial of relief of two separate PCRA petitions involving

---

[*] Former Justice specially assigned to the Superior Court.

unrelated incidents. The first incident, CC No. 199913942, was a shooting at Zone 6 Police Station which occurred on August 27, 1999 (hereinafter, "the shooting"). The trial court summarized as follows:

On or about, July 24, 2000, Ricky Boyer, (Defendant) was convicted of four counts of Aggravated Assault, one count of Criminal Conspiracy, and one count of Violation of the Uniform Firearms Act (VUFA). On September 11, 2000, Defendant was subsequently sentenced to an aggregate sentence of 35 to 90 years imprisonment. Defendant thereafter filed a direct appeal, which the Superior Court affirmed the judgement of sentence on March 27, 2002. On April 16, 2003, the Pennsylvania Supreme Court denied Defendant's Petition for Allowance of Appeal[.]

In March 2004, Defendant filed his first PCRA and in January 2010, a counseled Amended PCRA Petition was filed, and a hearing was held on September 7, 2010. The Petition was denied on January 24, 2011. Defendant appealed the denial of his PCRA Petition and the Superior Court affirmed on October 12, 2011. Defendant then filed a Petition for Allowance of Appeal which was denied on March 29, 2012.

In November 2012, Defendant filed a Petition for Writ of Habeas Corpus in in Federal Court which was denied in March 2015.

In January of 2013, Defendant filed a Second PCRA Petition. On April 22, 2020, Defendant filed an Amended *pro se* PCRA Petition. [The trial court] was reassigned this case and on June 9, 2020, and appointed Defendant counsel in his current PCRA claims. Following extensions of time, counsel for Defendant filed an Amended Second PCRA Petition on August 30, 2022. On January 31, 2023, the Commonwealth filed an Answer to the Amended Second PCRA Petition. On March 1, 2023, this Court issued a Notice of Intent to Dismiss. On March 20, 2023, Defendant filed a Response to Notice of Intent to Dismiss. On April 3, 2023, [the trial court] denied Defendant's PCRA Petition by Order of Court. Defendant subsequently filed a Notice of Appeal and on May 25, 2023, Defendant filed his Concise Matters Complained of on Appeal.

Tr. Ct. Op., No. 199913942, at 2-3.

The second incident, CC No. 199914156, was the attempted robbery and then completed robbery of a QwiCash Store which occurred August 30 and 31, 1999 (hereinafter, "the robbery"). The trial court summarized as follows:

> On or about, July 28, 2000, Ricky Boyer, (Defendant) was convicted of three counts of Robbery, one count of Criminal Attempt, and two counts of Criminal Conspiracy. On September 11, 2000, Defendant was subsequently sentenced to an aggregate sentence of 15 to 60 years imprisonment. Defendant thereafter filed a direct appeal, which the Superior Court affirmed the judgement of sentence on March 27, 2002. On September 12, 2002, the Pennsylvania Supreme Court denied Defendant's Petition for Allowance of Appeal[.]
>
> In July 2003, Defendant filed his first PCRA which was denied on May 12, 2005. Defendant appealed the denial of his PCRA which the Superior Court affirmed on April 3, 2006. Defendant thereafter filed a Petition for Allowance of Appeal which was denied on January 30, 2007.
>
> In June 2007, Defendant filed a Petition for Writ of Habeas Corpus in Federal Court which was dismissed in October 2009.
>
> Defendant filed a *pro se* second PCRA Petition and subsequently an Amended PCRA Petition, on or about March 8, 2019, and April 22, 2022, respectively. [The trial court] was reassigned this case and on June 9, 2020, and appointed Defendant counsel in his current PCRA claims. Following extensions of time, counsel for Defendant filed an Amended Second PCRA Petition on August 30, 2022. On January 31, 2023, the Commonwealth filed an Answer to the Amended Second PCRA Petition. On March 1, 2023, [the trial court] issued a Notice of Intent to Dismiss. On March 20, 2023, Defendant filed a Response to Notice of Intent to Dismiss. On April 3, 2023, [the trial court] denied Defendant's PCRA Petition by Order of Court. Defendant subsequently filed a Notice of Appeal and on May 25, 2023, Defendant filed his Concise Matters Complained of on Appeal.

Tr. Ct. Op., No. 199914156, at 2-3.

Pittsburgh City Police Detective Dennis Logan interrogated Appellant as to both incidents. At both trials, which occurred in July 2000, Detective Logan testified that Appellant confessed to him his involvement in the above incidents. Appellant denied having ever confessed to the crimes and claimed that Detective Logan coerced him to make inculpatory statements. Appellant's Br. at 7, 22-23.

In March 2000, a lawsuit was filed against Detective Logan alleging that during an interrogation, he violated the constitutional rights of a homicide suspect. **See** Appellant's Ex. 1, Pre-Trial Statement in **Clyde Manns v. City of Pittsburgh, et al.**, 2:00-cv-00-838. The plaintiff referenced a 1999 document from the Department of Public Safety, Office of Municipal Investigations (OMI) which listed three complaints against Detective Logan, and alleged that Detective Logan engaged in coercive interrogation techniques against him. A federal jury awarded the plaintiff $25,000 in damages in June 2002. A new trial was subsequently granted, and after a settlement conference, the parties entered into a stipulation dismissing the case with prejudice in November 2002. The complaints and lawsuit against Detective Logan are the reason for Appellant's instant petitions filed at each CC number.

Appellant raises one issues for our review:

> Did the lower court abuse its discretion in denying the PCRA Petitions, as amended, without a hearing on the grounds that it lacks jurisdiction to address the substantive claims because the petitions are untimely?

Appellant's Br. at 4.

Before we may discuss Appellant's PCRA claim, we must address an appellate procedural concern. Appellant's brief is thirty-eight pages long and does not contain a word count, and the Commonwealth's brief is thirty-four pages long and does not contain a word count. Each party violated Pennsylvania Rule of Appellate Procedure 2135, which states, in relevant part:

> (a) Unless otherwise ordered by an appellate court:
> (1) A principal brief shall not exceed 14,000 words. . . . A party shall file a certificate of compliance with the word count limit if the principal brief is longer than 30 pages . . . when prepared on a word processor or typewriter.
> * * *
> (d) Certification of compliance. Any brief in excess of the stated page limits shall include a certification that the brief complies with the word count limits. The certificate may be based on the word count of the word processing system used to prepare the brief.

Pa.R.A.P. 2135(a)(1), (d).

Notably, neither party's brief contains "a certificate of compliance with the word count limit," as required by Rule 2135(a)(1) and (d). Moreover, Pennsylvania Rule of Appellate Procedure 2101 states: "Briefs . . . shall conform in all material respects with the requirements of these rules as nearly as the circumstances of the particular case will admit, otherwise they may be suppressed, and, if the defects are in the brief . . . of the appellant and are substantial, the appeal or other matter may be quashed or dismissed." Pa.R.A.P. 2101. We note with displeasure each party's failure to comply with our rules. Nonetheless, since we conclude that each party's single deviation

from the rules applicable to briefs does not impede our review, we will overlook it. **Commonwealth v. Spuck**, 86 A.3d 870 (Pa. Super. 2014).

Appellant's sole claim is that the court erred in denying his PCRA petitions as untimely. Any PCRA petition "shall be filed within a year of the date judgment becomes final." 42 Pa.C.S.A. § 9545(b)(1). A judgment of sentence becomes final "at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of time for seeking review." **Id.** at 9545(b)(3). The PCRA's timeliness requirements are jurisdictional in nature, and a court may not address the merits of the issues raised if the PCRA petition was not timely filed. **Commonwealth v. Albrecht**, 994 A.2d 1091, 1093 (Pa. 2010).

Here, the date the judgment became final for the shooting was July 15, 2003, and the date the judgment became final for the robbery was December 18, 2002. **See** 42 Pa.C.S.A. § 9545(b)(1)-(3).[1] Appellant, therefore, had until July 15, 2004, and December 18, 2003, respectively, to file timely PCRA petitions. The current petitions, purportedly filed on January 3, 2013, and March 8, 2019, respectively, and amended on April 22, 2020, are patently untimely.

_____

[1] Appellant was sentenced in both cases on September 11, 2000, and this Court affirmed his judgments of sentence on March 27, 2002. Our Supreme Court denied Appellant's petitions for allowance of appeal in the shooting case on April 16, 2003, and the robbery on September 19, 2002. Direct review concluded ninety days later in both cases. 42 Pa.C.S.A. § 9545(b)(3).

However, Pennsylvania courts may consider an untimely petition if the petitioner can explicitly plead and prove one of the three exceptions set forth at 42 Pa.C.S.A. §§ 9545(b)(1)(i)-(iii). Those three exceptions are as follows:

> (i) the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States;

> (ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or

> (iii) the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.

*Id.* Any petition invoking one of these exceptions must be filed within one year—or sixty days—of the date the claim could have been presented. *Id.* at § 9545(b)(2).[2] "The PCRA petitioner bears the burden of proving the applicability of one of the exceptions." *Commonwealth v. Spotz*, 171 A.3d 675, 678 (Pa. 2017).

Here, Appellant concedes that the instant PCRA petitions are untimely. However, with respect to his PCRA petitions for both the shooting and the

---

[2] We observe that section 9545(b)(2) was amended on October 24, 2018, effective in 60 days (i.e., December 24, 2018), extending the time for filing from 60 days of the date the claim could have been first presented, to one year. The amendment applies to claims arising on December 24, 2017, or thereafter. *See* Act 2018, Oct. 24, P.L. 894, N. 146, § 3. Instantly, Appellant's claim regarding the OMI report could have been first presented in June 2013, and, therefore, the original 60-day limit applies. Appellant asserts he did not learn of the lawsuit against Detective Logan until March 2019, and thus the amended one-year limit applies to that claim.

robbery, Appellant purports to invoke the government interference and the newly-discovered facts exceptions, maintaining that the Commonwealth withheld evidence in violation of **Brady v. Maryland**, 373 U.S. 83 (1963), by failing to disclose that before and during his trials, a federal civil rights lawsuit was proceeding against Detective Logan, asserting allegations of coercive interrogation techniques that were similar to those used to interrogate Appellant. Appellant also claims that the Commonwealth failed to disclose the OMI report issued on October 26, 1999, that contained three complaints of alleged misconduct by Detective Logan. Appellant's Br. at 23-24.

The newly-discovered facts exception to the PCRA time bar confers jurisdiction on the PCRA court and "renders a petition timely when the petitioner establishes that the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence." **Commonwealth v. Small**, 238 A.3d 1267, 1271 (Pa. 2020) (quotation omitted). The Pennsylvania Supreme Court has "explained that the exception set forth in Section 9545(b)(1)(ii) does not require any merits analysis of the underlying claim. Rather, the exception only requires a petitioner to prove that the facts were unknown to him and that he exercised due diligence in discovering those facts." **Commonwealth v. Cox**, 146 A.3d 221, 227 (Pa. 2016) (internal citations and quotation marks omitted).

Appellant submits that he filed and/or amended the instant PRCA petitions within 60 days of learning of the OMI report and within one year of learning of the lawsuit naming Detective Logan. Appellant's Br. at 27.

However, Appellant's contention that he discovered that Detective Logan was the subject of three complaints in the OMI report and of a federal lawsuit does not amount to new facts. Rather, what Appellant is arguing is that he has discovered new sources to support his allegation of misconduct. It is settled law that the discovery of new sources for a previously known fact cannot satisfy a petitioner's burden under Section 9545(b)(1)(ii). **See Commonwealth v. Johnson**, 863 A.2d 423, 427 (Pa. 2004) ("The after-discovered evidence exception, however, focuses on newly discovered *facts*, not on a newly discovered or a newly willing source for previously known facts.") (emphasis in original). Appellant was aware of the tactics Detective Logan employed in his own interviews with the Detective in which Appellant participated. Appellant testified extensively about his interrogation at his suppression hearing on June 19-20, 2000, N.T. at 51-69, and his counsel maintained this claim at trial July 19-24, 2000. N.T. at 416-17.

Additionally, Appellant has not demonstrated that he or his prior counsel could not have discovered the evidence against Detective Logan with the exercise of due diligence. Appellant submits, and the Commonwealth acknowledges, the decision in **Commonwealth v. Small**, 238 A.3d 1267 (Pa. 2020), which disavowed the "public records presumption" with respect to previously unknown facts. Appellant's Br. at 29; Appellee's Br. at 29.

> For many years, the courts of this Commonwealth applied a "public records presumption" when considering the due diligence requirement in Subsection 9545(b)(1)(ii). **See Commonwealth v. Burton**, 638 Pa. 687, 158 A.3d 618, 632-633 (Pa. 2017). Courts routinely determined that "information [was] **not**

**unknown** to a PCRA petitioner when the information was a matter of **public record**[.]" *Id.* at 633 (citation & quotation marks omitted; emphases added). *See also Small*, 238 A.3d at 1271 (explaining the under the presumption, "a court [could] find that information available to the public is not a fact that is 'unknown' to the petitioner") (citations omitted).

In *Burton*, however, the Supreme Court chipped away at its prior decisions and held the public records presumption "**does not apply** to *pro se* prisoner petitioners." *Burton*, 158 A.3d at 638. The Court concluded that application of the presumption to *pro se* incarcerated petitioners was "contrary to the plain language of subsection 9545(b)(1)(ii) and was imposed without any apparent consideration of a *pro se* prisoner's **actual access** to information of public record." *Id.* (footnote omitted & emphasis added).

Subsequently, in *Small*, the Supreme Court "disavow[ed] the public records presumption" entirely. *Small*, 238 A.3d at 1286. The Court concluded that the presumption was contrary to the language of the newly discovered facts exception, which "does not call for any assessment of whether the asserted facts appear in the public record[,]" and was "engrafted . . . upon the statutory language . . . without meaningful discussion." *See id.* at 1283-84. Thus, the Court announced: "To the extent that earlier decisions, including our own, relied upon and applied that presumption to reject a petitioner's claim, they are now overruled." *Id.* at 1286 (footnote omitted).

*Commonwealth v. Fraticelli*, 303 A.3d 742 (Pa. Super. 2023).[3]

However, the availability of certain facts still plays into the due diligence analysis. *Small*, 238 A.3d at 1286. In *Small*, the Court stated:

The instant case provides one such example of the severe consequences that can result. The content of the asserted public record here was not widely reported in a newspaper or available

---

[3] We note that, pursuant to Pa.R.A.P. 126(b), unpublished non-precedential decisions of the Superior Court filed after May 1, 2019, may be cited for their persuasive value. We find guidance in the unpublished memorandum cited *supra* and find it to be persuasive in this matter.

- 10 -

online—it was a paper transcript from 1993, which was locked away in court storage. As in **Bennett**, the transcript "was a matter of 'public record' only in the broadest sense."

**Id.** at 1284. Here, the OMI reports were issued on October 26, 1999 and the complaint in **Manns v. City of Pittsburgh, et al.**, was filed in the Allegheny County Court of Common Pleas on March 13, 2000—when counsel represented Appellant for the jury trial—and the verdict in **Manns v. McDonald, et al.**, was rendered in the United States District Court for the Western District of Pennsylvania on June 27, 2002—when counsel represented Appellant for his direct appeal.

Appellant has not explained why his counsel at the time could not have discovered the pleadings, and instead unpersuasively argues that he need not have put forth "perfect vigilance" or "punctilious care." Appellant's Br. at 28-29. Unlike in **Small** where the paper transcript could not be considered a public record because it was locked in a courthouse and not available in a newspaper or online, here there were online news stories about the case against Detective Logan as early as 2002. As the Commonwealth points out, "a Google search using the terms 'Detective Dennis Logan police misconduct' brings up the June 28, 2002 newspaper article upon which [Appellant's co-defendant] relied." Appellee's Br. at 33.

In fact, Appellant admits in his brief that while Detective Logan apparently had "many prior cases," his counsel did not have the time to investigate them, indicating that Appellant or his counsel at the time was

aware of the possibility of these "facts" about Detective Logan. Appellant states,

> [Trial counsel] barely had time to file an alibi defense and a motion for severance in each case. Both cases were jury trials and were scheduled back-to-back. Counsel could ill-afford to spend the time to undertake a search of Detective Logan's many prior cases, and to investigate an avenue of defense that may or may not be fruitful.

Appellant's Br. at 32.

Accordingly, since the OMI report and the lawsuit against Detective Logan do not amount to "new facts," and because Appellant and his counsel did not act with due diligence, his invocation of the newly-discovered facts exception fails.

Appellant also invokes the governmental interference exception. Appellant's Br. at 20. An appellant satisfies governmental interference exception when "the failure to raise the claim previously was the result of interference by government officials." 42 Pa.C.S. § 9545(b)(1)(i). Regarding the governmental interference exception, our High Court has stated in the same vein that "[a]lthough a **Brady** violation may fall within the governmental interference exception, the petitioner must plead and prove the failure to previously raise the claim was the result of interference by government officials, and the information could not have been obtained earlier with the exercise of due diligence." **Commonwealth v. Abu-Jamal**, 941 A.2d 1263, 1268 (Pa. 2008). Regarding the OMI report and lawsuit against Detective Logan, Appellant submits,

This information was not disclosed to Mr. Boyer although it was in the possession of the government, that is, the Department of Public Safety, Office of Municipal Investigations (OMI), and in the possession of the Pittsburgh Police Department. ***See Kyles v. Whitley***, 514 U.S. 419, 434, 115 S.Ct. 1555 (1995) (the prosecutor "has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police.").

In September and October of 1999, Mr. Boyer was charged with offenses arising out of two separate incidents at Nos. CP-02-CR-0013942-1999 and CP-02-CR-0014156-1999. In July of 2000, Mr. Boyer proceeded to back-to-back jury trials in the two cases. At that time the Commonwealth, through the Pittsburgh Police Department, was well-aware of the allegations of misconduct against Detective Logan. It also knew that Mr. Boyer's position was that Detective Logan forced him to make inculpatory statements. In both Nos. CP-02-CR-0013942-1999 and CP-02-CR-0014156-1999, Mr. Boyer presented suppression motions alleging misconduct by Detective Logan. However, at no time prior to, during, or after Mr. Boyer's trial, did the Commonwealth provide Mr. Boyer with information regarding the misconduct charges against Detective Logan set forth in the OMI report and in the *Clyde Manns* lawsuit.

Appellant's Br. at 22-23.

There is no ***Brady*** violation when the defense has equal access to the allegedly withheld evidence. ***See Commonwealth v. Spotz***, 896 A.2d 1191, 1248 (Pa. 2006) ("It is well established that no ***Brady*** violation occurs where the parties had equal access to the information or if the defendant knew or could have uncovered such evidence with reasonable diligence." (internal citation omitted)).

Here, there is nothing of record indicating that the Commonwealth had, in its possession, evidence of the OMI report or the lawsuit against Detective Logan. Each party had equal access to be able to discover the information

about Detective Logan at the time. As analyzed above, Appellant or his counsel knew of or could have uncovered this information with reasonable diligence. Appellant avers,

> With regard to the governmental interference exception, premised on Mr. Boyer's ***Brady*** claim, the lower court should determine whether the prosecution interfered with Mr. Boyer's ability to present his claim. If in fact the court concludes that there was interference, then the court shall determine whether Mr. Boyer was diligent in seeking out the facts on which the claim is based.

Appellant's Br. at 37.

The claim Appellant presents, based on his new "facts," is that the nature of Detective Logan's interrogation of him was coercive and assaultive. There can be no argument that the Commonwealth interfered with Appellant's ability to raise this claim because he raised it and testified to it at the suppression hearing, and the claim was advanced by Appellant's trial counsel throughout trial. The facts upon which that claim is based is Appellant's own participation in the interview with Detective Logan and his experience with the Detective's tactics at the time. Accordingly, since Appellant was not precluded from raising his present claim, Appellant's invocation of the governmental interference exception fails.

The decision to hold an evidentiary hearing is within the discretion of the PCRA court and will not be reversed absent an abuse of that discretion. ***See Commonwealth v. Mason***, 130 A.3d 601, 617 (Pa. 2015). It is well settled that:

[t]here is no absolute right to an evidentiary hearing on a PCRA petition, and if the PCRA court can determine from the record that no genuine issues of material fact exist, then a hearing is not necessary. To obtain reversal of a PCRA court's decision to dismiss a petition without a hearing, an appellant must show that he raised a genuine issue of fact which, if resolved in his favor, would have entitled him to relief, or that that court otherwise abused its discretion in denying a hearing.

*Commonwealth v. Maddrey*, 205 A.3d 323, 328 (Pa. Super. 2019) (citations and quotation marks omitted).

The lower court concluded as follows:

With respect to Defendant's claims of governmental interference via a *Brady* violation, Defendant's claims fail because the alleged information is public information that does not come from a governmental source. . . . Defendant's newly discovered facts argument is without merit because Defendant fails to plead precisely as to why these facts were previously unknown to him through the exercise of due diligence. Furthermore, the cases against Detective Logan began before the start of Defendant's trial and finished during the pendency of his appeals. Defendant was represented by counsel for his trial and appeals. The cases and information regarding Detective Logan were matters of public record, as well as news stories that were published in the Pittsburgh greater area.

Tr. Ct. Op., No. 199913942, at 5-6; Tr. Ct. Op., No. 199914156, at 5-6.

Following our review of the record, we agree with the PCRA court's conclusion that an evidentiary hearing was unwarranted because Appellant's claims have no arguable merit. Further, Appellant has failed to present any genuine issue of material fact that would entitle him to a hearing. *See id.* at 328. Therefore, no relief is due.

Orders Affirmed.

Judge Kunselman concurs in the result.

Judge Beck files a dissenting memorandum.

Judgment Entered.

*Benjamin D. Kohler*

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 6/3/2024